# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

DAVID T. SEAY, )
)
      Plaintiff, )
)
v. ) Case No. CIV-14-393-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
      Defendant. )

## OPINION AND ORDER

The claimant David T. Seay requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born March 25, 1956, and was fifty-six years old at the time of the administrative hearing (Tr. 32). He completed twelfth grade and has worked as a truck driver (Tr. 50, 165). He alleges that he has been unable to work since July 1, 2010, due to left arm pain, chest tightness, shortness of breath, possible congestive heart failure, and possible sciatic nerve problems (Tr. 164).

**Procedural History**

On August 4, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Doug Gabbard, II, held an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 18, 2013 (Tr. 13-21). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step two of the sequential evaluation. He found that the claimant had the medically determinable impairments of hypertension with chest tightness, left arm pain and shortness of breath, obesity, peripheral edema of the lower extremities bilaterally, history of skin cancer, subjective complaints of a history of mini-

cerebrovascular accident (CVA), gastroesophageal reflux disease (GERD), and subjective complaints of sciatic nerve problems (Tr. 15). Finding that none of these impairments significantly limited the claimant's ability to perform basic work-related activities for 12 consecutive months, he found that the claimant did not have a severe impairment then concluded that the claimant was therefore not disabled (Tr. 18-21).

**Review**

The claimant challenges the ALJ's step two findings, and further challenges the ALJ's credibility assessment. The Court agrees with the claimant's first contention.

The medical evidence reflects that the claimant's hypertension was historically under poor control, and that he also had a heart murmur (Tr. 255-262). Additionally, due to the poor control of hypertension and medication side effects, the claimant began experiencing edema in 2009 (Tr. 261). In June 2010, the claimant presented to Tomah Memorial Hospital and was diagnosed with contact dermatitis, and noted to have a history of hypertension (Tr. 225-226). He then returned to the hospital that same month with complaints of chest pain, which was noted as probable angina, as well as a probable diagnosis of diabetes (Tr. 231). Upon admission, he was assessed with chest pain suspicious for angina, rule out myocardial infarction vs. unstable angina vs. other; elevated blood sugar, presumably related to steroids; hypertension; murmur of aortic stenosis; and dermatitis (presume drug interaction). An x-ray of the chest was normal (Tr. 233).

The claimant's treating physician referred him to Keesag Baron, M.D., and Dr. Baron examined the claimant on July 14, 2010. Dr. Baron assessed the claimant with

chest discomfort, hypertension, and abnormal electrocardiogram, and recommended stress test analysis and an echocardiogram for further evaluation of the heart murmur (Tr. 273). On July 15, 2010, a treadmill exam of the claimant was equivocal for ischemia, and also revealed mild basal inferior hypokinesis and left ventricular ejection fraction 61%.

On September 6, 2011, Dr. Mohammed Quadeer, M.D., conducted a consultative physical examination of the claimant. He noted the claimant's hypertension and dizziness, as well as chest pain, left arm pain, and shortness of breath (Tr. 278). He took a description of the claimant's chest discomfort as mid-sternal area without radiation, with the character of tightness, and that it was a 7 on a scale of 1-10 (Tr. 281). Additionally, the claimant's blood pressure was 162/103, although he had taken his medication that morning. He thus assessed the claimant with left arm pain and chest pain, shortness of breath accompanying chest pain, dizziness with chest pain, poorly-controlled hypertension, and obesity (Tr. 279). That same month, the claimant went to a health and wellness center for medication refills, noting he had been experiencing chest pains (Tr. 287). The treatment notes state that the claimant could not afford lab work or an EKG, so they refilled his medications and decided to refer him later when he could afford the lab work and EKG, but did go ahead with a cardiology referral (Tr. 289).

On October 14, 2011, state reviewing physician, Dr. Michael Slager, summarized the medical evidence, noting that the chest pain relieved by nitroglycerin was "of some concern, however, stress was described as showing an area of possible ischemia which was described as equivocal but more likely not ischemia," and further noted that the

claimant had not had a cardiac catheterization (Tr. 292-293). Dr. Slager then stated, "At this point in time there is no [diagnosis] regarding the etiology of his [chest pain], no other [medically determinable impairment] *resulting in severe limitation*, and he appears to be active. Therefore, he is currently found to be physically non-severe" (Tr. 293) [emphasis added].

The claimant continued to complain of chest pain, shortness of breath, edema, and poorly controlled hypertension through at least January of 2013 (Tr. 295-300). A stress test and echocardiogram done in November 2012 were negative (Tr. 305, 308-314). Additionally, he was suspected of having diabetes and given a diabetes education referral (Tr. 298).

In his written opinion, the ALJ noted the claimant's medically-determinable impairments, then found that he did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months, and that he therefore did not have a severe impairment (Tr. 18). He then found the claimant not credible noting, *inter alia*, that the claimant had been out mowing the yard and therefore appeared to be overstating his symptoms and limitations (Tr. 19-20).

The claimant argues that the ALJ erred at step two of the sequential analysis by failing to find his chest pains (whether angina or stress-induced ischemia), bilateral lower extremity edema, and shortness of breath were severe impairments. A claimant has the burden of proof at step two to show that he has an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137, 146-147 (1987). This

determination "is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the burden at step two is a *de minimus* showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), *citing Williams*, 844 F.2d at 751. A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352. In this case, the claimant was treated a number of times for his chest pain and shortness of breath, as well as edema, and the record further reflects that the claimant's diagnosed hypertension was frequently not under control and that he had a heart murmur. The record further reflects that these impairments also limited what the claimant could do. The Court is therefore satisfied that this evidence meets the claimant's *de minimus* burden of showing a severe impairment at step two, noting that the standards for evaluation at step two and step four are significantly different and should not be conflated. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("The evidence . . . showed that she . . . had a consultation with a rheumatologist, Dr. Booth, for purposes of evaluating arthritis. He found that she had some osteoarthritis of the knees. He noted pain in her other joints but could not definitively assign an etiology to the pain at that time. Thus, under a *de minimus*

standard, the ALJ's finding that arthritis was not a medically determinable impairment appears to be unsupported by substantial evidence.") [citations omitted].

Because the claimant met his burden of showing multiple severe impairments at step two, the decision of the Commissioner should be reversed and the case remanded for further analysis. Upon remand, the ALJ should evaluate the claimant's impairments, singly and in combination.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**